UNITED STATES, Appellee,

v.

Private E1 Francisco G. BARRIOS, 459–19–5241, United States Army, Appellant.

ACMR 8902678.

U.S. Army Court of Military Review.

28 Sept. 1990.

For Appellant: Lieutenant Colonel James R. Anthony, JAGC, USAR, Captain Jeannine C. Hinman, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Denise J. Arn, JAGC (on brief).

Before JOHNSON, WERNER and GRAVELLE, Appellate Military Judges.

## OPINION OF THE COURT

GRAVELLE, Judge:

Contrary to his pleas, appellant was convicted by a general court-martial composed of officer and enlisted members of wrongful distribution of cocaine in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a. The convening authority approved the sentence of a bad-conduct discharge.

## I. ADMISSIBILITY OF LABORATORY REPORT

On appeal, appellant asserts that it was error for the military judge to admit into evidence an improperly authenticated laboratory report. Specifically, appellant objects to the photocopied authentication certificate which was offered to authenticate the laboratory report. The record indicates that a photocopy of the laboratory report as well as a photocopy of the authenticating certificate was received by the local CID evidence custodian from the CID laboratory at Fort Gillem. The local CID evidence custodian testified that he personally received and opened the registered mail package from the CID laboratory. The package contained only photocopies of the two documents along with the chain of

custody document and the evidence identified by the laboratory as cocaine. We note that the authenticating certificate correctly identifies the laboratory case number and is signed by the Deputy Records Custodian on United States Army Criminal Investigation Laboratory—CONUS letterhead stationery. We agree with the Government that there was no genuine question raised at trial as to the authenticity of the laboratory report or the attesting certificate. *Cf. United States v. Vietor,* 10 M.J. 69 (C.M.A.1980). Although we do not encourage use of photocopied authentication certificates, we find that in this case the laboratory report was sufficiently authenticated and was therefore properly admitted into evidence at trial. Manual for Courts–Martial, United States, 1984, [hereinafter MCM, 1984], Mil.R.Evid. 902 and 1003. Even if the military judge erred in this case, we find that there was sufficient independent evidence presented to the court that the substance distributed by the appellant was in fact cocaine.

## II.  DENIAL OF CHALLENGES FOR CAUSE

■ Appellant also asserts that it was error for the military judge to deny challenges for cause against COL B and LTC S, two members of the court, because of inflexible attitudes towards sentencing. Having failed in his challenge of LTC S for cause, defense counsel challenged him peremptorily. The issue of denial of the challenge for cause against LTC S has been preserved for appeal. MCM, 1984, Rule for Courts–Martial 912(f)(4). In light of our disposition of this case, however, we need not determine the issue of the military judge's denial of the challenge for cause against LTC S. We now turn to the question of the denial of the challenge for cause against COL B.

During *voir dire,* the following occurred:

IDC: Colonel [S], if Private Barrios were convicted of the charge before you—which is distribution—let's assume that he was convicted for our purposes—is there any circumstance that you would not vote to discharge him from the Army?

LTC [S]: Not one that I can think of.

IDC: Colonel [B], sir, I'd ask you the same question.

COL [B]: No.

IDC: In other words, if he is convicted, you would vote to discharge him?

COL [B]: Yes.

\*    \*    \*    \*    \*    \*

MJ: All right. Are there any questions by the prosecution, prompted by questions of the defense?

TC: Yes, there are your honor. Colonel [B], you've indicated to the defense counsel that—assuming that Private Barrios is convicted of the stated offense in this case—that you would vote, probably, to separate. Is that correct sir?

COL [B]: Yes.

TC: Is that statement, sir, one that you—would you vote that way, no matter what kind of evidence the accused put on, in sentencing—for example, extenuation and mitigation, and so forth? Are you so firmly set, at this time, that you could not, in good conscience vote any other way; no matter what you heard from the defense, in mitigating evidence?

COL [B]: He asked me—you know—if he was convicted of distribution of drugs. I would be open minded; but, in my business, I would have to answer, "Yes."

TC: "Yes," that you would be open-minded, sir, or—

COL [B]: I would eliminate him. Yes, I would be open-minded; but, if he's convicted of distribution of drugs, then, in aviation, there's no place for him—sorry.

TC: Okay, then, so what you're saying is that your opinion, then, is based on somebody from your own unit—being court-martialled, for example—and, then, recognizing the seriousness of the operation of your unit, it would be your view, in that case that there'd be no place for that soldier in the Army?

COL [B]: No place for a soldier that distributes drugs, in an aviation organization—in my organization. There's no place in the Army for them.

TC: And how about Private Barrios, who's a member of another organization?

Do you have a different feeling on that, or—

IDC: Your Honor, at this point, we're going to object. I think that the colonel was very clear, when he answered the question.

MJ: And, what was your question (to trial counsel)?

TC: I just asked, Your Honor, if Colonel [B] felt that, for Private Barrios, he would have a similar view about the severity of the offense; or, if he would be inclined to view the—

MJ: I assume what you're asking, then, is for individuals who are not part of the aviation organization?

TC: Exactly, Your Honor.

MJ: Very well. You may proceed.

COL [B]: Do you want me to answer that?

TC: Yes, sir.

COL [B]: Well, in my opinion there's a small line—there's a difference between use and distribution. I can be a little bit tolerant—and, that's a bad word—I can understand how soldiers can use drugs, and get caught at that. I cannot understand how a soldier can distribute drugs; especially to fellow soldiers.

TC: Have you, then, sir—are you ruling out any sort of punishment, other than a discharge in this case? In other words, I guess my question is—uh—no matter what the defense presents in evidence, in this case will you be able to maintain an open mind about the evidence; and, adjudge an appropriate sentence, based on that evidence that you hear; and, not on an inelastic predisposition you might have about a certain sentence, or portion of a sentence?

COL [B]: I'm not sure I understand the question. I guess—I guess what I'm saying is that, if the defendant was found guilty of distribution of drugs, that that would concern me a great deal, in my line of work. And, I don't know what that means to you—uh—and, maybe I didn't answer the question.

TC: You'd be concerned, sir, but you wouldn't be closed-minded is that what I hear?

IDC: Well, Your Honor, I'm going to object to that as suggesting the answer. This man's a colonel and a commander in the Army, and he's stated his position, very clearly—what it is.

MJ: The objection is overruled.

TC: Thank you, Your Honor. I guess, then, the short question, Colonel [B], is: Can you wait until you hear the evidence that the defense is going to present, on sentencing, before you make your decision about what is an appropriate sentence?

COL [B]: Yes.

Later, Colonel B responded to further questions outside the hearing of the other members:

IDC: Now, Colonel [S] indicated that—you know—he might—that there might be a circumstance that he might keep somebody in. What kinds of considerations might you consider, in the case of someone like Private Barrios, where you would say, "Well, in this exceptional case, I would not recommend a discharge."?

COL [B]: There may be something—uh—and, I'm here to listen—

IDC: Well, if he were sitting here wearing the Medal of Honor, we might consider—

COL [B]: No—no, that wouldn't ensure—

IDC: Okay. That wouldn't impress you?

COL [B]: No—

IDC: Or, a decoration for valor? I don't mean to pick on that one, particularly.

COL [B]: No, that would not impress me.

IDC: Okay. I have no further questions from Colonel [B].

MJ: Questions from the prosecution?

TC: Sir, when you say that the Medal of Honor wouldn't impress you, do you mean that, because, basically there's nothing that would impress you, or because—

COL [B]: The medal would impress the hell out of me, sure—please don't misunderstand what I'm saying—

TC: Uh-huh.

COL [B]: —but, if somebody is selling drugs to people in the Army, then I

couldn't—you know—there may be something—there may be some reason that I don't know of—I never heard of—why this person is selling drugs—but, off the top of my head—you know—having experienced a lot of this—I just can't think of them—you know—but, there may be. I don't know, I haven't heard the case. TC: All right, sir. Thank you.

■ The *voir dire* questioning demonstrates an inelastic predisposition towards imposing a punitive discharge disturbingly similar to that in *United States v. Karnes,* 1 M.J. 92 (C.M.A.1975) and *United States v. Hayden,* 17 M.J. 749 (A.C.M.R.1984). Under these circumstances, we find that the military judge abused his discretion in not granting the challenge for cause. *United States v. Boyd,* 7 M.J. 282 (C.M.A. 1979); *United States v. Dean,* 17 C.M.R. 44 (C.M.A.1954); *United States v. Hayden, supra.* We find nothing that would suggest any predilection by COL B or by any other member to convict in this case and we conclude that the findings are not tainted. Therefore, it is not necessary to reverse the findings of guilty. *United States v. Heriot,* 21 M.J. 11 (C.M.A.1985). A rehearing on the sentence is necessary.

## III. EXCUSAL OF COURT MEMBERS

■ One other matter not raised by the appellant deserves comment. Through an administrative mistake prior to trial, the appellant's court-martial was referred to the court convened by Convening Order 14 rather than to Convening Order 12. To correct the mistake, a new convening order, number 15, was prepared, based on specific direction of the convening authority, detailing those members from Order 12 and relieving those from Order 14. Because three of the same members appeared in both convening orders 12 and 14, Convening Order 15 at first blush appears to detail and then to immediately relieve these three members. Trial defense counsel prior to entry of a plea, raised the issue of jurisdiction and objected to the composition of the court, asserting that the three members were without authority to participate. The military judge found that an ambiguity existed with respect to the convening au-

thority's intentions as to these three members. Because the convening authority was not immediately available to resolve the ambiguity, the military judge, with specific defense counsel approval, excused the three members in question. While the confusion caused by the convoluted referral process of this case is understandable, we believe that the convening authority clearly intended the three members to be part of appellant's court-martial. We can find no authority in the Uniform Code of Military Justice or in the Manual for Courts–Martial for the military judge to excuse members duly appointed by the convening authority. Excusal of three members of a nine-member panel by the military judge is not jurisdictional error; however, it is error. *United States v. Colon,* 6 M.J. 73 (C.M.A.1978); *United States v. Allen,* 18 C.M.R. 250 (1955); *United States v. Alexander,* 27 M.J. 834 (A.C.M.R.), *pet. denied,* 28 M.J. 354 (C.M.A.1989). A reduction of forty or fifty percent has been held to be too fundamental a change to represent the court contemplated by the convening authority and cannot be shrugged off as harmless error. *Allen,* 18 C.M.R. at 262; *see also Colon, supra.* Here, the military judge reduced the court membership by one-third, dangerously close to denying the convening authority his sole right to determine the composition of the court-martial. Likewise, appellant also has a right to be tried by a court personally selected by the convening authority. Unlike the situation in *Colon,* however, we do not believe that the error denied military due process to the appellant. Here, appellant raised the issue at trial and affirmatively argued for and agreed with the military judge's action. We hold that under the circumstances of this case, this particular error is waived.

The findings of guilty are affirmed. The sentence is set aside and a rehearing on the sentence may be ordered by the same or a different convening authority.

Senior Judge JOHNSON and Judge WERNER concur.