*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————

## UNITED STATES
Appellee

**v.**

## Norbert A. KING II, Lieutenant Colonel
United States Air Force, Appellant

**No. 22-0008**
Crim. App. No. 39583

Argued October 26, 2022—Decided February 23, 2023

Military Judges: J. Wesley Moore (arraignment and motions), Steven J. Grocki (motions), and Shaun S. Speranza (motions and trial)

For Appellant: *Tami L. Mitchell*, Esq. (argued); *Mark C. Bruegger*, Esq. (on brief).

For Appellee: *Major Brittany M. Speirs* (argued); *Colonel Naomi P. Dennis*, *Lieutenant Colonel Matthew J. Neil*, and *Mary Ellen Payne*, Esq. (on brief); *Major Morgan R. Christie*.

Chief Judge OHLSON delivered the opinion of the Court, in which Judge SPARKS, Judge HARDY, and Senior Judge EFFRON joined. Judge MAGGS filed a separate opinion concurring in the judgment. Judge HARDY filed a separate concurring opinion.

———————

Chief Judge OHLSON delivered the opinion of the Court.

Contrary to his pleas, a panel of officer members sitting as a general court-martial convicted Appellant of one specification of sexual assault of his seventeen-year-old biological daughter and one specification of committing an act of sexual penetration on his blood relative, an offense not capital, in violation of N.J. Stat. Ann. § 20:14-2(c)(3)(a) (West 2014), assimilated into federal law by 18 U.S.C. § 13 (2012), in violation of Articles 120 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 934 (2012). The adjudged and approved sentence included confinement for three years and a dismissal. The United States Air Force Court of Criminal Appeals (CCA) set aside and dismissed with prejudice the Article 134, UCMJ, charge and its specification, affirmed the remaining findings, and affirmed the reassessed sentence of confinement for three years and a dismissal. We granted review of the following issue:

> Was Appellant's court-martial improperly constituted because the convening authority excused a member after the court-martial was assembled without establishing good cause on the record for excusing him?

*United States v. King*, 82 M.J. 275, 275-76 (C.A.A.F. 2022) (order granting review). We answer the granted issue in the negative and affirm the judgment of the CCA.

## I. Background

This case underscores the need for everyone involved in a court-martial to pay meticulous attention to the panel member selection process.

The original convening order applicable to Appellant's court-martial listed Lieutenant Colonel (Lt Col) PBL as a primary panel member and Colonel (Col) DL as an alternate panel member. At the time of the court-martial's assembly on April 16, 2018, there were fifteen members present. These members included Lt Col PBL but not Col DL. There is no accounting on the record for Col DL's absence.

To a large degree, Lt Col PBL is the focus of this appeal. During group and individual voir dire he indicated that he knew the accused and some of the witnesses, and that he had previously served on a court-martial. Lt Col PBL also revealed that he had been arrested and falsely accused of rape by a classmate when he was fifteen years old. He explained that "the charges were unfounded and later dismissed and the accuser in the case was proved to be lying." The experience had been "[e]ye opening" for him, but the justice system "worked out like it was supposed to." Lt Col PBL elaborated as follows:

> I believe absolutely you can be accused of a crime and I think that evidence will speak for itself. So throughout the process the truth came to light and that's what really matters in the justice system. So that's kind of what I realized in the system. So if you do the process and work it, it will work out like it's supposed to more often than not.

Upon inquiry by the military judge, both parties specifically declined to challenge Lt Col PBL for cause. Indeed, the military judge noted that the defense "affirmatively desire[d] to have this court member on this particular panel."

After challenges for cause and the defense's peremptory challenge, Appellant's court-martial was left with five members. This included Lt Col PBL who, as the senior member, served as the president of the panel. However, due to a scheduling conflict with the defense expert consultant, the military judge granted a defense motion for an extended continuance of the trial. The military judge then inquired whether the continuance would affect any of the members' ability to remain on the court-martial. Lt Col PBL responded: "[J]ust to be aware, my change of command is slated for June but I am expected to PCS over to [another organization on base], which will keep me in place, but I will just be in a different organization at that time." Although the military judge explained that the members could be released upon a showing of good cause, he also stated: "You also remain panel members for this case and are expected to be available on that particular

date. As indicated, you were selected and ordered by the Convening Authority in this case, this is your primary duty." The military judge then noted: "We will enter a period of extended adjournment. . . . [U]ntil 26 July."

Appellant's trial resumed on July 24, 2018, with a new military judge, a new senior trial counsel, and seven newly detailed panel members. However, three members of the original panel were absent from this court-martial session even though they remained on Appellant's court-martial panel. As for two other members of the original panel, including Lt Col PBL, an amendment to the convening order placed into the record showed that they had been "relieved" by the convening authority.[1]

Despite this status of the panel members, at the outset of the court-martial the following exchange occurred between the military judge and the Government:

> MJ: And those members that are absent were relieved by the convening authority, correct?
>
> TC: Yes, Your Honor.
>
> . . . .
>
> STC: Sorry, Your Honor. The members that are absent were at a previous hearing. They are still on the panel they are just not present. *The others were excused at an earlier session.*

(Emphasis added.)

As demonstrated above, the assertion by the senior trial counsel that Lt Col PBL and another panel member had

---

[1] At an Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2012), session held at the beginning of the court-martial proceedings on July 24, 2018, trial counsel referenced Special Order A-14 and noted that a copy had been "furnished to the military judge, [defense] counsel, and the accused, and . . . at this point will be inserted in the record." Special Order A-14 was signed by the staff judge advocate on behalf of the convening authority and stated in relevant part: "The following members are detailed to the general court-martial convened by Special Order A-8, this headquarters dated 11 April 2018, vice [Lt Col PBL] and [Lt Col KMW] relieved."

been excused at an earlier court-martial session was wrong. However, the military judge did not correct the senior trial counsel even though the amendment to the convening order which had been placed into the record minutes earlier contradicted this assertion. And importantly, trial defense counsel did not object to the Government's misstatement. In fact, Appellant did not challenge the composition of the court-martial panel at any point in the trial proceedings, raising the issue for the first time on appeal to the CCA.

Appellant's general court-martial panel ultimately was composed of five members, three original members and two newly detailed members. It was this panel that convicted Appellant of the Article 120 and Article 134 offenses and sentenced him to confinement for three years and a dismissal.

On appeal to the CCA, Appellant raised various assignments of error, including "whether the court-martial was improperly constituted." *United States v. King*, No. ACM 39583, 2021 CCA LEXIS 415, at *2, 2021 WL 3619892, at *1 (A.F. Ct. Crim. App. Aug. 16, 2021) (unpublished). In rendering its opinion, the CCA explained:

> In response to this assignment of error, the Government moved to attach a declaration of Colonel (Col) WA, the staff judge advocate to the general court-martial convening authority. Col WA's declaration includes several attachments which document the written excusal request[] of Lt Col PBL, dated 14 June 2018, . . . as well as the staffing package showing the convening authority's decision to excuse [Lt Col PBL]. We granted the motion to attach Col WA's declaration and the attachments over Appellant's objection. We understand that we are permitted to consider declarations from outside the record of trial when necessary to resolve issues raised by materials in the record of trial. *See United States v. Jessie*, 79 M.J. 437, 442-44 (C.A.A.F. 2020). This permits us to consider the declaration of Col WA and the attachments. Taken together, these documents show that Lt Col PBL was not reassigned to another

unit on [Joint Base McGuire-Dix-Lakehurst, New
Jersey as he had previously expected] but [in-
stead] was selected for Air War College on 7 June
2018 and had a PCS to Maxwell Air Force Base,
Alabama, not later than 18 July 2018. . . .

In his written advice to the general court-mar-
tial convening authority, Col WA, citing R.C.M.
505(c)(2), stated excusal after assembly may only
be done for "good cause on the record." Col WA de-
fined "good cause" consistent with R.C.M. 505(f)
and explained that it does not include temporary
inconveniences which are incident to normal con-
ditions of military life. The general court-martial
convening authority excused Lt Col PBL . . . by in-
itialing next to [his] name[].

*Id.* at *40-42, 2021 WL 3619892, at *14.

After considering the staff judge advocate's declaration
and its attachments, the CCA denied relief on Appellant's
claim that his court-martial was improperly constituted.
*Id.* at *46-60, 2021 WL 3619892, at *14-18. Specifically, the
CCA first determined that Appellant had forfeited this is-
sue by failing to raise it at trial. *Id.* at *46, 2021 WL
3619892, at *15. Then, applying a plain error analysis, the
lower court concluded that "it was plain or obvious error
when the Government failed to show good cause for [Lt Col
PBL's] excusal on the record." *Id.* at *52, 2021 WL 3619892,
at *17. Despite this finding of plain error, the CCA next
determined that Appellant was not entitled to relief be-
cause there was no material prejudice to a substantial
right. *Id.* at *54-59, 2021 WL 3619892, at *17-18. After con-
sidering the remaining issues, the CCA affirmed the Arti-
cle 120 conviction and its reassessed sentence of confine-
ment for three years and a dismissal. *Id.* at *5, *186,
2021 WL 3619892, at *2, *57.

## II. Standards of Review

In resolving this case, we need to address issues related
to waiver, the attachment of documents on appeal, jurisdic-
tion, and prejudice. These issues implicate multiple stand-
ards of review.

6

We review whether an issue is waived de novo. *United States v. Rich*, 79 M.J. 472, 475 (C.A.A.F. 2020). We review whether a lower court properly attached documents for an abuse of discretion. *See United States v. Akbar*, 74 M.J. 364, 409 (C.A.A.F. 2015). We review the issue of jurisdiction de novo. *United States v. Begani*, 81 M.J. 273, 276 (C.A.A.F. 2021). And finally, "[o]ur review for prejudice is de novo." *United States v. Sigrah*, 82 M.J. 463, 467 (C.A.A.F. 2022).

### III. Discussion

### A. Waiver

As a preliminary matter, the Government contends that Appellant waived by operation of law his claim that the court-martial was improperly constituted. Rule for Courts-Martial (R.C.M.) 905(e). The Government notes that the 2016 version of the R.C.M. applies to this case, which states in relevant part:

> Other motions, requests, defenses, or objections [not required to be raised before pleas under R.C.M. 905(b)], except lack of jurisdiction or failure of a charge to allege an offense, must be raised before the court-martial is adjourned for that case and, unless otherwise provided in this Manual, failure to do so shall constitute *waiver*.

R.C.M. 905(e) (2016 ed.) (emphasis added). The Government then correctly points out that this Court cannot review waived issues because a valid waiver leaves no error to correct on appeal. *See Rich*, 79 M.J. at 476.

We conclude, however, that Appellant has not waived this issue but merely forfeited it. First, in the past this Court typically has viewed court-martial composition issues through a forfeiture lens rather than a waiver lens. *See, e.g.*, *United States v. Mack*, 58 M.J. 413, 417 (C.A.A.F. 2003) ("Absent objection, any alleged defects in the administrative process [of excusing primary members and adding

substitute members] are tested for plain error.").[2] And second, we recently noted in *United States v. Bench* that there is "debate about the meaning of the word 'waive[d]' in R.C.M. 905(e)," and we determined that forfeiture was the prudent approach to take under the circumstances. 82 M.J. 388, 393 (C.A.A.F. 2022) (alteration in original). Thus, we conclude that the language of R.C.M. 905(e) does not mandate a waiver analysis in the member selection context. *United States v. Cook*, 48 M.J. 434, 436 (C.A.A.F. 1998) (noting although the "dispute about the composition of the panel [prior to assembly] . . . did not concern appellant at trial," this Court reviewed the issue for plain error).[3] Because forfeiture rather than waiver applies here, we will review Appellant's issue for plain error.

---

[2] *See also United States v. Adams*, 66 M.J. 255, 257, 259 (C.A.A.F. 2008) (reviewing member selection issue even though the defense had an "opportunity to object to the appointing order or the procedure" but did not); *United States v. Sargent*, 47 M.J. 367, 368, 369 (C.A.A.F. 1997) (noting that defense counsel did not object to proceeding without" a member and finding that "appellant has not demonstrated substantial prejudice. Art. 59(a)"); *cf. United States v. Vazquez*, 72 M.J. 13, 17 (C.A.A.F. 2013) ("treat[ing] the failure to object [to the procedure established in Article 29(b), UCMJ, 10 U.S.C. § 829(b) (2006)] as forfeiture and review[ing] for plain error"). Indeed, when reviewing member selection issues in the past, this Court has used the term "waiver" despite applying a plain error analysis. *Cook*, 48 M.J. at 436; *United States. v. McElroy*, 40 M.J. 368, 371 n.2 (C.M.A. 1994). This reflects the past reality of "the failure of military courts to consistently distinguish between the terms 'waiver' and 'forfeiture.' " *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (citing *United States v. Harcrow*, 66 M.J. 154, 156 n.1 (C.A.A.F. 2008)).

[3] R.C.M. 905(e)(2) (2019 ed.) now provides: "Other motions, requests, defenses, or objections, except lack of jurisdiction or failure of a charge to allege an offense, must be raised before the court-martial is adjourned for that case. Failure to raise such other motions, requests, defenses, or objections, shall constitute *forfeiture*, absent an affirmative waiver." (Emphasis added.)

**B. Attachment of Documents on Appeal**

In the course of deciding this case, we next must determine whether it is appropriate for this Court to consider the documents which the CCA attached to the appellate record and which contain information about the convening authority's decision to excuse Lt Col PBL from Appellant's court-martial panel. As indicated above in the excerpt from the CCA opinion, these documents included Lt Col PBL's written excusal request, the staff judge advocate's advice, and the convening authority's decision to excuse Lt Col PBL, all of which collectively demonstrated why Lt Col PBL was no longer detailed to Appellant's court-martial. For the reasons set forth below, we conclude that the CCA did not abuse its discretion in attaching these documents and that we may consider them in reaching our decision in this case.

Although in *United States v. Jessie* we held that "a CCA cannot consider matters outside the 'entire record,'" we further opined that CCAs may attach documents "when doing so is necessary for resolving issues raised by materials in the record." 79 M.J. 437, 444 (C.A.A.F. 2020) (quoting Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2012)). At Appellant's court-martial, the convening order stating that Lt Col PBL was "relieved" from the panel had been "inserted in the record." Further, the military judge inquired on the record about the status of all absent panel members, prompting the senior trial counsel to erroneously state that Lt Col PBL had been "excused at an earlier session." Nevertheless, the record did not provide the CCA with information about the circumstances under which Lt Col PBL had been relieved or excused, and the documents were necessary to resolve the question of whether the panel was improperly constituted. Thus, the CCA acted within the parameters of our *Jessie* decision when it decided to attach and consider the documents at issue here.[4]

---

[4] Appellant asserts that *Jessie* is inapposite to the instant case. Specifically, he argues that *Jessie* refers to "the *entire* record" which can include such material as post-trial submissions,

Consistent with our decision in *Jessie*, we further note that it would be incongruous for this Court to allow a defense counsel to wait until appeal to raise for the first time an excusal issue that had not been previously raised at trial, but then prevent the government from having an opportunity to effectively respond to that issue by blocking the government's efforts to attach relevant documents on appeal. To do so would result in appellants automatically getting a new trial even in those instances where a defense counsel "sandbagged" the government by intentionally failing to raise an excusal issue at trial. We decline to adopt that approach.

We therefore hold that the CCA did not abuse its discretion by attaching relevant materials that were outside the record to resolve Appellant's member selection issue, and we will consider these documents in the course of deciding the granted issue.

## C. Jurisdiction

### 1. Applicable Law

We next turn our attention to the very heart of this case—the question of whether the court-martial was properly constituted.

"[C]ourt members are, unless properly waived, an indispensable jurisdictional element of a general court-martial." *United States v. Ryan*, 5 M.J. 97, 101 (C.M.A. 1978). Military law distinguishes between the excusal of detailed members before and after assembly. *See* R.C.M. 505(c)(1)-(2) (2016 ed.); R.C.M. 911 Discussion (2016 ed.) ("Assembly of the court-martial is significant because it

---

but that R.C.M. 505(c)(2)(A)(i) (2016 ed.) refers to good cause "*shown on the record*" which means that the matter must have been "discussed in open court in a manner such that it can be seen in the printed transcript or heard in the audio recording of the in-court sessions." Reply Brief on Behalf of Appellant at 6, *United States v. King*, No. 22-0008 (C.A.A.F. June 10, 2022) (internal quotation marks omitted). We disagree. We conclude that *Jessie* is on point in this case and that the phrase "shown on the record" encompasses "the entire record."

marks the point after which . . . substitution of the members . . . may no longer take place without good cause . . . ."). "*Prior* to assembly of the court-martial, the convening authority has unfettered power to excuse any member of the court from participating in the case." *Cook*, 48 M.J. at 436 (emphasis added) (citing Article 25(e), UCMJ, 10 U.S.C. § 825(e)); R.C.M. 505(c)(1)(A) (2016 ed.). However, *after* assembly:

> No member of a general or special court-martial may be absent or excused . . . unless excused as a result of a challenge, excused by the military judge for physical disability or other good cause, or *excused by order of the convening authority for good cause*.

Article 29(a), UCMJ, 10 U.S.C. § 829(a) (2012) (emphasis added). Consistent with this statute, R.C.M. 505(c)(2)(A) (2016 ed.) states in relevant part: "After assembly no member may be excused, except: (i) By the convening authority for good cause shown on the record . . . ."

After assembly, new members may only be detailed to a court-martial panel if the panel has fallen below quorum due to lawful excusals. Article 29(b)(1), UCMJ; R.C.M. 505(c)(2)(B) (2016 ed.). If the court-martial is below quorum, "the trial may not proceed unless the convening authority details new members sufficient in number to provide" a quorum. Article 29(b)(1), UCMJ.

"This Court's case law distinguishes between jurisdictional and administrative errors in the convening of a court-martial. Jurisdictional error occurs when a court-martial is not constituted in accordance with the UCMJ." *Adams*, 66 M.J. at 258. "A court-martial composed of members who are barred from participating by operation of law, or who were never detailed by the convening authority, is improperly constituted and the findings must be set aside as invalid" because such error is jurisdictional. *Id.* On the other hand, "[a]dministrative errors in the drafting of a convening order are not necessarily fatal to jurisdiction, and may be tested for prejudice under Article 59(a), UCMJ, 10 U.S.C. § 859(a)." *Id.* at 259; *Cook*, 48 M.J. at 436 ("Any

error with respect to such an administrative matter must be tested for prejudice.").

## 2. Analysis

We conclude that the error in this case arising from the Government's failure to document at trial the convening authority's reason for excusing Lt Col PBL was not jurisdictional in nature.

As a foundational legal point, we note that in prior cases this Court has treated as an administrative error the government's failure to place on the record the reason that existed for excusing a panel member. *United States v. Matthews*, 17 C.M.A. 632, 635-36, 38 C.M.R. 430, 433-34 (1968) (stating the error of not establishing on the record good cause for the member excusal was "not jurisdictional"); *see also United States v. Latimer*, 30 M.J. 554, 563 (A.C.M.R. 1990) ("it is generally agreed that noncompliance with Article 29(a), UCMJ, is not jurisdictional error, provided a quorum remains" (citations omitted)). These precedents control in the instant matter.

We next note that there was indeed "good cause" for the convening authority to excuse Lt Col PBL from the panel. To begin with, there is nothing in the record that indicates that Lt Col PBL's unanticipated assignment to the Air War College was just a pretext to remove him from Appellant's court-martial panel.[5] And critically, as seen below, Lt Col PBL's assignment to the Air War College—which began before the commencement of Appellant's continued trial—was a proper reason to excuse Lt Col PBL under the rules.[6]

---

[5] Appellant asserts that he was wrongly accused of sexual assault and notes that during voir dire Lt Col PBL stated that he also had been wrongly accused of sexual assault, perhaps leading the Government to surmise that Lt Col PBL—who was slated to serve as the president of the panel—would have been sympathetic to Appellant's claims at trial.

[6] Indeed, at oral argument, Appellant did not challenge Lt Col PBL's assignment to the Air War College as being insufficient to show good cause for the excusal. Instead, Appellant's position was that this Air War College rationale was not shown on

R.C.M. 505(f) (2016 ed.) states in pertinent part that good cause includes "military exigency . . . and other extraordinary circumstances which render the member . . . unable to proceed with the court-martial," but good cause does not include "temporary inconveniences which are incident to normal conditions of military life." For an officer such as Lt Col PBL, who was initially assigned to serve on Appellant's court-martial panel at Joint Base McGuire-Dix-Lakehurst in New Jersey, his subsequent assignment to the intensive Air War College in Montgomery, Alabama, was not just a "temporary inconvenience[]" but instead was a "military exigency . . . and other extraordinary circumstance[]" which merited his excusal.

Therefore, considering the documents properly attached by the CCA, we conclude that there was good cause for the convening authority to excuse Lt Col PBL, and thus the Government's error in failing to note the convening authority's reasoning on the trial record was not jurisdictional but rather was administrative in nature.[7] As a final step in our analysis, we turn to the issue of prejudice.

---

the record. Also, in Appellant's reply brief, he stated that "Appellant does not argue that selection for professional military education may *never* qualify as 'good cause' for excusing a member from court-martial service." Reply Brief on Behalf of Appellant at 17, *United States v. King,* No. 22-0008.

[7] In addition to his arguments regarding Lt Col PBL, Appellant asserts that there was jurisdictional error because of the unexplained status of Col DL. Appellant's reasoning is summarized as follows: Because Col DL was a detailed member to Appellant's court-martial, he should have been counted towards quorum. As a result, even assuming that Lt Col KW's excusal was proper, Appellant's court-martial never fell below quorum because there were still five panel members—the four other members impaneled after voir dire, including Lt Col PBL, and the detailed alternate member, Col DL, who had not been relieved after assembly of Appellant's court-martial. That is, Lt Col PBL and Col DL had not been properly excused under R.C.M. 505(c)(2)(A) (2016 ed.), so they were still members. Because the excusals of Lt Col PBL and Col DL were not shown on the record under R.C.M. 505(c)(2)(A)(i) (2016 ed.), Appellant's

## D. Prejudice

The administrative error committed by the Government in this case is reviewed for plain error. This standard of review is applicable because Appellant did not challenge at trial the Government's failure to show good cause on the record for excusing Lt Col PBL.

Under the plain error standard of review, an appellant "bears the burden of establishing: (1) there is error; (2) the error is clear or obvious; and (3) the error materially prejudiced a substantial right." *United States v. Robinson*, 77 M.J. 294, 299 (C.A.A.F. 2018). The Government commendably and appropriately concedes the first two prongs of this test, stating that "there was an administrative error under R.C.M. 505(c)(2)(A)(i) when no good cause was shown on the record for the excusal of Lt Col [PBL]" and that this "was plain and obvious error." Brief for Appellee at 13, 24, *United States v. King*, No. 22-0008 (C.A.A.F. May

court-martial never fell below quorum, and the convening authority did not have the authority to detail new members under R.C.M. 505(c)(2)(B) (2016 ed.). As a result, the convening authority's appointment of new members was unlawful, and these putative new members of the panel were actually interlopers. Thus, there was jurisdictional error in this case.

We are unpersuaded by Appellant's argument. Appellant does not challenge before this Court the excusal of the other original member—Lt Col KW—and the CCA found this member's excusal was supported by "sufficient good cause shown on the record." *King*, 2021 CCA LEXIS 415, at *53, 2021 WL 3619892, at *17. In light of our conclusion that Lt Col PBL's excusal also was proper, the court-martial panel dropped below quorum even considering Col DL's unexplained and unchallenged absence. The convening authority was then authorized to detail additional members to the court-martial when the court-martial fell below quorum. Article 29(b)(1), UCMJ; R.C.M. 505(c)(2)(B) (2016 ed). Following additional voir dire and member challenges of the replacement members, Appellant's court-martial constituted a quorum of five members. Because there was a quorum of five properly appointed members, Appellant's general court-martial had jurisdiction over his case. Article 16(1)(A), UCMJ, 10 U.S.C. § 816(1)(A) (2012).

31, 2022). As a result, the only issue left for this Court to consider is whether Appellant has met his burden of showing prejudice arising from the Government's failure at trial to place on the record the good cause for excusing Lt Col PBL.[8]

We conclude that Appellant has not met his burden. We initially note that an accused is not entitled to a specific panel member. *See United States v. Easton*, 71 M.J. 168, 176 (C.A.A.F. 2012) (noting that military accused do not have the right to have their cases tried by a particular court). Moreover, despite the false accusation of rape against Lt Col PBL, it is rank speculation that he would have been favorable to the defense as a panel member.

Appellant claims that because the Government failed to raise at trial the reason why the convening authority "relieved" Lt Col PBL from serving on the court-martial, he "was denied the opportunity to investigate the legitimacy of Lt Col PBL's request for excusal and litigate the issue at trial." Brief for Appellant at 26-27, *United States v. King*, No. 22-0008 (C.A.A.F. Apr. 28, 2022). Appellant makes a fair point. However, we note that Appellant was fully aware of Lt Col PBL's absence at trial and this issue was raised by the military judge and the Government on the record, and yet Lt Col PBL's absence did not elicit an objection or even a comment, question, or concern by the defense. If Appellant had raised this issue in any manner during the court-martial, he most certainly would have been provided "the opportunity to investigate the legitimacy of Lt Col PBL's request for excusal and litigate the issue at trial." *Id.* at 26. Therefore, by not objecting at trial, Appellant shares responsibility for creating the situation about which he now complains and for precluding the timely resolution of the matter. *United States v. Marshall*, 67 M.J. 418, 419 (C.A.A.F. 2009) ("The purpose of the forfeiture rule is to ensure that the trial judge has the opportunity to

---

[8] There is no constitutional error here, and as such, the burden is on Appellant to show prejudice. *United States v. Tovarchavez*, 78 M.J. 458, 462 & n.6 (C.A.A.F. 2019).

rule on issues arising at trial, and to prevent the raising of such issues for the first time on appeal, after any chance to correct them has vanished." (footnote omitted)).

Additionally, consistent with the explanation provided in *supra* note 7 we conclude that contrary to Appellant's assertion, the excusal of Lt Col PBL did not result in any interlopers sitting on the panel. An interloper is understood to be one "who was not detailed at all to the court-martial on which he sat." *United States v. Gebhart*, 34 M.J. 189, 192 (C.M.A. 1992). Here, the convening authority properly detailed additional members to the panel when it fell below quorum—which was his right. *See* Article 29(b)(1), UCMJ.

Finally, we note that the change in the members of the panel did not change the number of votes Appellant needed to obtain an acquittal because there were still five panel members. *See* Article 52(a)(2), UCMJ, 10 U.S.C. § 852(a)(2) (2012).

Based on these factors, we conclude that although Appellant can meet the first two prongs of the plain error standard of review, he fails to establish prejudice.[9] Accordingly, we hold that even though the convening authority excused a panel member after the court-martial was assembled without placing on the trial record the good cause that existed for doing so, Appellant's request that we set aside his conviction and sentence must be denied because he has failed to demonstrate prejudice arising from this administrative error.

---

[9] Appellant claims that a presumption of prejudice applies because (1) the failure to show good cause on the record is like an incomplete record of trial and (2) there is an Article 29 violation. We disagree. The excusal documents were not a part of the record of trial, and so the omission of those documents did not make the record incomplete. And when the CCA properly attached those documents, that material demonstrated the good cause the convening authority had for excusing Lt Col PBL.

## IV. Judgment

The judgment of the United States Air Force Court of Criminal Appeals is affirmed.

Judge MAGGS, concurring in the judgment.

Appellant contends that his court-martial was improperly constituted. His argument is that a detailed panel member was absent without being excused by the convening authority for " 'good cause shown on the record' " in violation of Rule for Courts-Martial (R.C.M.) 505(c)(2)(A)(i).[1] The Government responds that the objection that Appellant now raises was waived by operation of law under R.C.M. 905(e) because Appellant did not make the objection at trial. The Government asserts that we therefore cannot consider it. The Court today holds that Appellant did not waive his objection but merely forfeited it. Accordingly, the Court determines that it must review the issue for plain error. Applying plain error review, the Court determines that Appellant has demonstrated an error, that the error was clear and obvious, but that Appellant has not shown that this error caused him prejudice. The Court therefore concludes that Appellant is not entitled to relief.

I reach the same result as the Court but for a different reason. Unlike the Court, I agree with the Government that Appellant's objection was waived by operation of law and not merely forfeited. I write separately to explain my disagreement.

## I.

Waiver differs from forfeiture. When an objection to an alleged error is waived, this Court cannot review the objection on appeal. *United States v. Rich*, 79 M.J. 472, 476 (C.A.A.F. 2020). In contrast, if the objection is merely forfeited, this Court may review the issue for plain error. *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009). When conducting a plain error review of a nonconstitutional issue, this Court may grant relief only if the appellant proves that there was an error, that the error was clear and obvious, and that the error caused material prejudice. *United States v. Robinson*, 77 M.J. 294, 299 (C.A.A.F. 2018).

---

[1] The parties agree that the version of the R.C.M. that appears in the *Manual for Courts-Martial, United States* (2016 ed.) (*MCM*), applies to this case.

In this case, Appellant did not object to the absence of a member of his court-martial until after his trial was over. R.C.M. 905(e) specifies the "[e]ffect of failure to raise defenses or objections." This provision contains three sentences. The first two sentences are not applicable to this case because they concern only the pretrial objections listed in R.C.M. 905(b)(1)-(6), which do not include an objection based on the absence of an unexcused court member. *Id.* The third sentence then says: "Other motions, requests, defenses, or objections, except lack of jurisdiction or failure of a charge to allege an offense, must be raised before the court-martial is adjourned for that case and, unless otherwise provided in this Manual, failure to do so shall constitute waiver." *Id.*

The Government argues that Appellant's objection to the composition of his court-martial fits within the third sentence of R.C.M. 905(e). I agree. Appellant's objection is an example of the "[o]ther . . . objections" that the third sentence of R.C.M. 905(e) contemplates because it is not one of the objections listed in R.C.M. 905(b)(1)-(6). The Government therefore argues that the objection is waived by operation of law. I also agree with this assessment. Appellant's objection is one that "must be raised before the court-martial is adjourned." Accordingly, because Appellant did not raise it, I conclude that his "failure to do so . . . constitute[s] waiver" under the plain meaning of R.C.M. 905(e).[2]

---

[2] The President's decision to use the term "waiver" in the third sentence of R.C.M. 905(e) did not violate Article 36, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 836 (1982), the statute that authorized the President to promulgate the rule in 1984. Article 36, UCMJ, granted the President discretion to prescribe procedural rules that conform "so far as he considers practicable" to the rules applied in criminal cases tried in the United States district courts. The article, however, did not require the President to *explain* why he considered it practicable to follow some of the Federal Rules of Criminal Procedure but not others. Reviewing this Court's past decisions, Judge Everett has written that "the President's determination of practicability seems nonreviewable, unless it clashes with a specific provision of the Uniform Code or the Constitution." Robinson O. Everett,

**II.**

The question of whether Appellant waived or forfeited his objection would require no more discussion except for

---

*Some Comments on the Role of Discretion in Military Justice*, 37 Law & Contemp. Probs. 173, 180 (1972). But even if this Court were to insist that the President's determination of practicability have some rational basis, that standard would be easily met here.

When the Joint Service Committee on Military Justice (JSC) drafted the *MCM* (1984 ed.), it announced that the first of its "basic goals" was that "the new Manual was to conform to Federal practice to the extent possible, except where the Uniform Code of Military Justice requires otherwise or where specific military requirements render such conformity impracticable." *MCM*, Analysis app. 21 at A21-1 (1984 ed.) (citing Article 36, UCMJ) [hereinafter Analysis]. Accordingly, the JSC carefully considered analogous provisions in the Federal Rules of Criminal Procedure when it drafted R.C.M. 905(e). In its Analysis of R.C.M. 905(e), the JSC explained:

> The first two sentences in this subsection are taken from Fed. R. Crim. P. 12(f) . . . . The third sentence is based on paragraph 67*a* of MCM, 1969 (Rev.). The Federal Rules of Criminal Procedure do not expressly provide for waiver of motions other than those listed in Fed. R. Crim. P. 12(b) . . . . Nevertheless, it has been contended that because Fed. R. Crim. P. 12(b)(2) provides that lack of jurisdiction or failure to allege an offense "shall be noticed by the court at any time during the pendency of the proceedings," "it may, by negative implications be interpreted as foreclosing the other defenses if not raised during the trial itself." 8A J. Moore, *Moore's Federal Practice* ¶ 12.03[1] (1982 rev. ed.). . . . There is no reason why other motions should not be waived if not raised at trial. Moore's, *supra* at ¶ 12.03[1]; *accord* C. Wright, *Federal Practice and Procedure* § 193 (1969).

*Id.* at A21-47–A21-48. Although the JSC's Analysis "does not necessarily reflect the views of the President in approving" the R.C.M., *id.* at A21-3, the explanation in the Analysis identifies a rational basis for the President's exercise of discretion in using the word "waiver" in the third sentence of R.C.M. 905(e).

one significant problem: our precedents concerning the consequences of failing to make objections to the composition of courts-martial are all over the map. In at least one precedent, this Court has held that an objection to the composition of a court-martial "was waived" because "it was not raised at trial," and the Court accordingly did not review the issue. *United States v. Curtis*, 44 M.J. 106, 133 (C.A.A.F. 1996). Other precedents, however, have treated the failure to raise such objections as a forfeiture and have applied plain error review. *E.g.*, *United States v. Mack*, 58 M.J. 413, 417 (C.A.A.F. 2003); *United States v. Adams*, 66 M.J. 255, 257, 259 (C.A.A.F. 2008); *United States v. Sargent*, 47 M.J. 367, 368, 369 (C.A.A.F. 1997). Still others have stated that a failure to raise such objections constitutes a "waiver" but then have applied what appears to be plain error review nonetheless. *E.g., United States v. Cook*, 48 M.J. 434, 436 (C.A.A.F. 1998); *United States. v. McElroy*, 40 M.J. 368 (C.M.A. 1994).

I see no way of reconciling these conflicting decisions. Significantly, not one of these cases explains *why* the Court was treating a failure to object as either a waiver or a forfeiture. In these circumstances, I do not think that any one of these decisions has much precedential weight. *See* Bryan A. Garner et al., *The Law of Judicial Precedent* 229 (2016 ed.) (explaining that "a court won't normally accept as binding precedent a point that was passed by in silence"); *see also Webster v. Fall*, 266 U.S. 507, 511 (1925) (holding that "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents"). Accordingly, in deciding this appeal, my view is that the Court should simply start over and apply the plain text of R.C.M. 905(e)'s third sentence. Following this course leads me to conclude that Appellant's objection was waived by operation of law. On that basis, I would affirm the findings and sentence of the court-martial.

### III.

Sometimes deciding whether a failure to make an objection should be treated as a waiver or a forfeiture may have

significant consequences. These consequences—rightly or wrongly—may tilt the scales of judicial interpretation. But this certainly is not one of those cases. The waiver-versus-forfeiture issue ultimately does not change the result of this case because the Court and I agree that Appellant is not entitled to relief. In addition, the disagreement over how to interpret the version of R.C.M. 905(e) that applies to this case will likely have little import in future cases. As the Court explains, the President recently amended R.C.M. 905(e) to provide that failure to raise "other . . . objections" shall "constitute forfeiture, absent affirmative waiver." R.C.M. 905(e)(2) (2019 ed.). Whatever the interpretation of R.C.M. 905(e) (2016 ed.) is in this appeal, future cases should follow the plain meaning of the new text in R.C.M. 905(e) (2019 ed.).

In addition, except in a most unusual case, regardless of whether a court decides that the accused's failure to object to a member's absence should be treated as a waiver or a forfeiture, the outcome will be the same. If the objection is waived, the court cannot consider it. Plain error review is more permissive, but it still requires the appellant to prove prejudice. Appellants generally cannot prove prejudice even if they can show that a court member was absent without being excused "[b]y the convening authority for good cause shown on the record," as R.C.M. 505(c)(2)(A)(i) requires. To borrow the words of the Court, guessing how the absent member would have voted will be, in most instances, nothing more than "rank speculation."

Confronted with this reality, Appellant argues that prejudice should be presumed. Some older precedents directly support this view. *E.g.*, *United States v. Greenwell*, 12 C.M.A. 560, 562, 31 C.M.R. 146, 148 (1961). But more recent precedents have applied plain error review without presuming prejudice. *E.g., Mack*, 58 M.J. at 417; *Adams*, 66 M.J. at 259; *Sargent*, 47 M.J. at 369. Once more seeing no way to reconcile these precedents, I would again return to first principles. As explained above, plain error review requires an appellant to prove prejudice. *Robinson*, 77 M.J. at 299. Accordingly, even if an objection to the composition

of a court-martial is merely forfeited, and not waived, prej-
udice should not be presumed.

Judge HARDY, concurring.

I concur with the majority's reasoning and join the Court's opinion in full. I write separately to offer an additional reason why I think the Court properly treats the word "waived" in the final sentence of the pre-2019 version of Rule for Courts-Martial (R.C.M.) 905(e) (2016 ed.) as "forfeited," rather than as "waived."[1]

Article 36(a) expressly delegates to the President the authority to prescribe procedural and evidentiary rules for conducting courts-martial, but that authority is not unlimited. The President's rules must, "so far as he considers practicable, apply the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts." Article 36(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 836(a) (2012).[2] In the federal civilian courts, the general rule is that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Fed. R. Crim. P. 52(b). Thus, civilian federal courts of appeals generally review errors not timely raised in federal district court for plain error absent affirmative waiver. *See United States v. Olano*, 507 U.S. 725, 731-32 (1993) (explaining the operation of Fed. R. Crim. P. 52(b)). If the President intended the final sentence of R.C.M. 905(e) (2016 ed.) to preclude the military appellate

---

[1] The first two sentences of the pre-2019 version of R.C.M. 905(e) (2016 ed.) address the waiver of objections, motions, and requests that must be raised in a pretrial motion. These sentences parallel Fed. R. Crim. P. 12(c)(3) and are not at issue in this case.

[2] Article 36(a), UCMJ, also imposes a second limitation: the President's rules generally may not be "inconsistent with" the other provisions of the UCMJ. Whether interpreting R.C.M. 905(e) (2016 ed.) as barring appellate review of all issues not raised at trial is "inconsistent with" the military appellate courts' statutory authority to determine whether the findings and sentence set forth in the entry of judgment are correct in law is a more nuanced and complicated question that need not be resolved here.

courts from reviewing "[o]ther motions, requests, defenses, or objections" not raised at trial for plain error, then that would render R.C.M. 905(e) (2016 ed.) a significant departure from the "principles of law . . . generally recognized in the trial of criminal cases in the United States district courts." Article 36(a), UCMJ; *see Hormel v. Helvering*, 312 U.S. 552, 557 (1941) ("A rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with . . . . the rules of fundamental justice.").

Article 36(a), UCMJ, would permit such a departure *if* the President considers adherence to federal practice impracticable. But neither the President in the *Manual for Courts-Martial, United States* (*MCM*) nor the Government in this case has offered any explanation why it would be impracticable for the military appellate courts to review errors that were not raised by the parties at trial. As the majority notes, this Court has long interpreted R.C.M 905(e)—at least in some circumstances—to impose forfeiture rather than waiver, *see United States v. King*, __ M.J. __, __ (7-8) (C.A.A.F. 2023), but the Government has not argued that those opinions have made appeals in those types of cases impracticable. Moreover, the President's recent amendment to R.C.M. 905(e)—which replaces "waiver" with "forfeiture, absent an affirmative waiver"—is strong evidence that the President considers conformity with federal practice to be practicable. *See* R.C.M. 905(e) (2019 ed.); *see also MCM*, Analysis of the Rules for Courts-Martial app. 15 at A15-14 (2019 ed.) (explaining the recent amendment).

Interpreting the final sentence of the pre-2019 version of R.C.M 905(e) (2016 ed.) as barring appellate review of all issues not raised at trial would represent a significant deviation from practice in the federal courts. Absent any indication from the President why the general federal practice would be impracticable in the military, such an interpretation would potentially run afoul of Article 36(a),

UCMJ; *see United States v. Kohlbek*, 78 M.J. 326, 333 (C.A.A.F. 2019) (interpreting Military Rule of Evidence 707 to conform with federal practice in part because although "[t]he presence of a unique military concern could make following the federal practice . . . impracticable and justify a divergent rule. . . . no such military concern is obvious here" (citations omitted)). Because "[a]n interpretation of a statute or rule that renders it valid is preferable to an interpretation that would invalidate the rule," I agree that we should interpret the final sentence of R.C.M 905(e) (2016 ed.) as imposing forfeiture rather than waiver. *Kohlbek*, 78 M.J. at 332 (citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 66 (2012)). I therefore concur that Appellant forfeited the issue and plain error is the appropriate standard of review in this case.